## IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF OKLAHOMA

**(1) DR. LESLIE HANNAH,**

**Plaintiff,**

**vs.**

**(1) NORTHEASTERN STATE UNIVERSITY;**
**(2) DR. BRIAN COWLISHAW;**
**(3) DR. DONNA SHELTON;**
**(4) DR. AUDELL SHELBURNE;**
**(5) DR. PHILLIP BRIDGMON; and**
**(6) DR. WILLIAM RUGG,**

**Defendants.**

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

**SUSAN E. WERNER, OBA# 9482**
**Assistant Attorney General, Litigation Unit**
**Office of the Oklahoma Attorney General**
**313 Northeast 21st Street**
**Oklahoma City, Oklahoma 73105**
**Telephone: (405) 521-3921**
**Facsimile: (405) 521-4518**
**Susan.Werner@oag.ok.gov**

*Attorney for the Defendants*

**December 15, 2014**

**TABLE OF CONTENTS**

**Page Number(s)**

**TABLE OF AUTHORITIES**     iv – x

**STATEMENT OF THE CASE**     1 – 2

**STATEMENT OF FACTS**     2 – 6

**STANDARD OF REVIEW**     6 – 7

**SUMMARY OF THE ARGUMENT**     7

**ARGUMENT AND AUTHORITY**     7 – 23

    **I.**    ***Hannah has not Established a Claim of Discrimination or Retaliation by Disparate Treatment***     8 – 14

      A.    Hannah has not Demonstrated a *Prima Facie* Case of Race Discrimination or Retaliation     8 – 12

      B.    NSU's Legitimate Reasons for Denying Hannah Tenure and Early Promotion     12 – 13

      C.    Hannah Failed to Show Intentional Discrimination or Retaliation Pretext     13 – 14

    **II.**    ***Hostile Work Environment***     14 – 19

      A.    Hannah has not Established a Hostile Work Environment     14 – 15

      B.    The Conduct of Shelton and Cowlishaw, is Insufficient to Impute Vicarious Liability to NSU     15 – 17

      C.    NSU is Relieved of Liability by its Measures Preventing and Remedying Harassment     17 – 18

      D.    Hannah Failed to Avail Himself of NSU's Remedial Measures     18 – 19

    **III.**    ***Hannah's Claims are Barred by the Eleventh Amendment and Qualified Immunity***     19 – 22

      A.    NSU is Entitled to Eleventh Amendment Immunity     19

ii

B.    Hannah's Claims Against Individual Defendants Under §1981,     19 - 20
Fails to Stata a Claim Upon Which Relief may be Granted

C.    Defendants are Entitled to Qualified Immunity     20 – 22

***IV. Hannah does not have a Constitutional Property Right to Tenure***     22 – 23

***V. Hannah's Tortious Interference/Breach of Contract and***     23
***Emotional Distress Claims are Subject to Dismissal***

**CONCULSION**     23 – 24

**SIGNATURE PAGE**     24

**CERTIFICATE OF SERVICE**     25

# TABLE OF AUTHORITIES

## CASES

**Page Number(s)**

*Adler v. Wal-Mart Stores, Inc.*,
144 F.3d 664, 675-676 (10th Cir. 1998) ................................................................. 17

*Alden v. Maine*,
119 S.Ct. 2240, 2246 (1999) ................................................................. 19

*Anderson v. Creighton*,
107 S.Ct. 3034, 3038, 3041 (1987) ................................................................. 21

*Anderson v. Liberty Lobby, Inc.*,
106 S.Ct. 2505, 2510 (1986) ................................................................. 6

*Antonio v. Sygma Network, Inc.*,
458 F.3d 1177, 1182 (10th Cir. 2006) ................................................................. 10

*Ashcroft v. Iqbal*,
129 S.Ct. 1937, 1945 (2009) ................................................................. 15, 12

*Ashcroft v. Iqbal*,
129 S.Ct. 1937, 1949, 1950 (2009) ................................................................. 15

*Bell Atlantic Corp. v. Twombly*,
127 S.Ct. 1955, 1964-1965 (2007) ................................................................. 15

*Board of Regents of State Colleges v. Roth*,
92 S.Ct. 2710, 2709 (1972) ................................................................. 22

*Bunger v. University of Oklahoma Bd. of Regents*,
95 F.3d 897, 990 (10th Cir. 1996) ................................................................. 22 – 23

*Burlington Industries, Inc. v. Ellerth*,
118 S.Ct. 2257, 2270 (1998) ................................................................. 16

*Burlington Northern and Santa Fe Ry. Co. v. White*,
126 S.Ct. 2405, 2415 (2006) ................................................................. 14

*Clark v. Cache Valley Elec. Co.*,
573 Fed. Appx. 693, 700-701 (10th Cir. 2014) ................................................................. 9

*Clark County School Dist. v. Breeden*,
121 S.Ct. 1508, 1510 (2001) ................................................................. 12

iv

*Clark County School Dist. v. Breeden*,                                        9, 12
121 S.Ct. 1508, 1511 (2001)

*Coleman v. Houston Independent School Dist.*,                              20 – 21
113 F.3d 528, 533-534 (5th Cir. 1997)

*Cotton v. Costco Wholesale Corp.*,                                               15
2014 WL 29108*4 (D. Ks)

*Curran v. AMI Fireplace Co., Inc.*,                                             16
163 Fed. Appx. 714, 719 (10th Cir. 2006)

*Debord v. Mercy Health System of Kansas, Inc.*,                                 17
737 F.3d 642, 654 (10th Cir. 2013)

*Deboard v. Mercy Health System of Kansas, Inc.*,                                11
737 F.3d 642, 654-655 (10th Cir. 2013)

*Debord v. Mercy Health System of Kansas, Inc.*,                                 18
737 F.3d 642, 655 (10th Cir. 2013)

*Drake v. City of Fort Collins*,                                                  8
927 F.2d 1156, 1162 (10th Cir. 1991)

*Durham v. McDonald's Restaurants of Oklahoma*,                                  23
256 P.3d 64, 67 (2011)

*Eastern Oklahoma Bldg. & Const. Trades Council v. Pitts*,                       22
82 P.3d 1008, 1014 (Okla. 2003)

*E.E.O.C. v. Picture People, Inc.*,                                              14
684 F.3d 981, 990 (10th Cir. 2012)

*E.E.O.C. v. PVNF, L.L.C.*,                                                       9
487 F.3d 790, 803 (10th Cir. 2007)

*Ellis v. University of Kansas Medical Center*,                                  19
163 F.3d 1186, 1196 (10th Cir. 1998)

*Elwell v. Oklahoma, ex rel., Bd. of Regents of University of Oklahoma*,         19
693 F.3d 1303, 1315 (10th Cir. 2012)

*Faragalla v. Douglas County School Dist. RE1*,                                  16
411 Fed. Appx. 140, 154 (10th Cir. 2011)

*Faragher v. City of Boca Raton*,                          15, 16, 17, 18, 20
118, S.Ct. 2275, 2292-2293 (1998)

*Faragher v. City of Boca Raton*,                          15
118 S.Ct. 2275, 2293 (1998)

*Filarsky v. Delia*,                                        21
132 S.Ct. 1657, 1665 (2012)

*Furr v. Seagate Technology, Inc.*,                        24
82 F.3d 980, 986 (10th Cir. 1996)

*Green v. New Mexico*,                                      9
420 F.3d 1189, 1194-1195 (2005)

*Harlow v. Fitzgerald*,                                     21
102 S.Ct. 2727, 2736, 2738 (1982)

*Harlow v. Fitzgerald*,                                     21
102 S.Ct. 2727, 2738 (1982)

*Harris v. Forklift Systems, Inc.*,                        14, 15
114 S.Ct. 367, 370 (1993)

*Haynes v. Williams*,                                       8
88 F.3d 898, 899 (10th Cir. 1996)

*Held v. Ferrellgas, Inc.*,                                12
505 Fed. Appx. 687, 689-691 (10th Cir. 2012)

*Helm v. Kansas*,                                           17
656 F.3d 1277, 1290 (10th Cir. 2011)

*Hunter v. Bryant*,                                         21
112 S.Ct. 534, 536-537 (1991)

*Jett v. Dallas Independent Sch. Dist.*,                   20
109 S.Ct. 2702, 2721 (1989)

*Jett v. Dallas Independent School Dist.*,                 20
109 S.Ct. 2702, 2722-2733 (1989)

*Jones v. University of Central Oklahoma*,                 23
2014 WL 582949 at *3 (W.D. Okla 2013)

*Koppenhaver v. United School Dist. No. 500*,    19 – 20
2013 WEL 1704917*4 (D. Ks)

*Lawrence v. School Dist. No. 1*,    20
560 Fed. Appx. 791 (10th Cir. 2014)

*Lindsy v. Brinkler Intern. Payroll Co., L.P.*,    23
2011 WL 2493047*4 (W.D. Okla)

*Malley v. Briggs*,    21
106 S.Ct. 1092, 1096 (1986)

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*,    6
106 S.Ct. 1348, 1356 (1986)

*McDonnell Douglas Corp. v. Green*,    8
93 S.Ct. 1817 (1973)

*McPherson v. HCA-HealthOne, L.L.C.*,    17
202 F.Supp. 2d 1156, 1175 (D. Colo. 2002)

*Medina v. Cram*,    7
252 F.3d 1124, 1130 (10th Cir. 2001)

*Meritor Sav. Bank, FSB v. Vinson*,    14
106 S.Ct. 239*, 2406 (1986)

*Mitchem v. Edmond Transit Management, Inc.*,    20
2012 WL 2370669*69 (W.D. Okla)

*Monell v. Department of Social Services*,    20
98 S.Ct. 2018, 2036 (1978)

*Murrell v. School Dist. No. 1 Denver*,    21
186 F.3d 1238, 1250 (10th Cir. 1999)

*National R.R. Passenger Corp. v. Morgan*,    7
122 S.Ct. 2061, 2070 (2002)

*National Railroad Passenger Corp. v. Morgan*,    20
122 S.Ct. 2061, 2073 (2002)

*Odom v. Potter*,    24
379 Fed. Appx. 740, 743-744 (10th Cir. 2010)

*Orr v. City of Albuquerque*,  9
417 F.3d 1144, 1149 (10th Cir. 2005)

*Pinkerton v. Colorado Dept. of Transp.*,  18
563 F.3d 1052, 1063 (10th Cir. 2009)

*Potts v. Davis County*,  22
551, F.3d 1188, 1192 (10th Cir. 2009)

*Reeves v. Sanderson Plumbing Products, Inc.*,  8, 13
120 S.Ct. 2097, 2106 (2000)

*Reeves v. Sanderson Plumbing Products, I*nc.,  24
120 S.Ct. 2097, 2109 (2000)

*Reeves v. Sanderson Plumbing Products, I*nc.,  6
120 S.Ct. 2097, 2110 (2000)

*Sabourin v. University of Utah*,  9
676 F.3d 950, 958 (10th Cir. 2012)

*Shepard v. CompSource Oklahoma*,  23
209 P.3d 288, 294 (Okla 2009)

*Shoals v. City of Broken Bow, Okla.*,  20
2011 WL 3847202*1 (E.D. Okla)

*Siegert v. Gilley*,  21
111 S.Ct. 1789, 1793-1794 (1991)

*St. Mary's Honor Center v. Hicks*,  8
113 S.Ct. 2742, 2746 (1993)

*St. Mary's Honor Center v. Hicks*,  13
113 S.Ct. 2742, 2748-2749 (1993)

*State, ex rel., Whetsel v. Wood*,  22
248 P.2d 612, 615 (Okla. 1952)

*Taylor v. City of Bixby, Okla.*,  20
2012 WL 6115051*4 (N.D. Okla)

*Texas Dept. of Community Affairs v. Burdine*,  8, 9
101 S.Ct. 1089, 1094 (1981)

*University of Texas Southwestern Medical Center v. Nassar*,                    13 – 14
133 S.Ct. 2517, 2526 (2013)

*University of Texas Southwestern Medical Center v. Nassar*,                    14
133 S.Ct. 2517, 2534 (2013)

*Vance v. Ball State University*,                                                16
133 S.Ct. 2434, 2443, 2454 (2013)

*Voiles v. Santa Fe Minerals, Inc.*,                                            23
911 P.2d 1205, 1210 (Okla 1996)

*Will v. Michigan Dept. of State Police*,                                       19
109 S.Ct. 2304, 2312 (1989)

## S<small>TATUTES</small>

**Page Number(s)**

Article II, §2 of the Oklahoma Constitution                                     22

Okla. Stat. Title 51 §152.1                                                     19

Okla. Stat. Title 51 §156                                                       23

Eleventh Amendment                                                             2, 19

Fourteenth Amendment                                                           22

§1981                                                                     1, 8, 19, 20

§1983                                                                         19, 20

Title 42 U.S.C.A. §1981                                                         19

Title 42 U.S.C.A. §2000(e)(2)(m)                                                14

Title VII                                                                    1, 8, 20

U.S.C.A. CONST Amend. XI                                                        19

## R<small>ULES</small>

**Page Number(s)**

Rule 56, F.R.C.P.                                                                1

## <u>OTHER</u>

<u>**Page Number(s)**</u>

McDonnell Douglas                                                 8, 12, 13

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| (1)   DR. LESLIE HANNAH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | Case No.     CIV-14-74-RAW |
| (1)   NORTHEASTERN STATE | ) | |
|        UNIVERSITY, | ) | Cherokee County Case No. |
| | ) | CJ-2014-0010 |
| (2)   DR. BRIAN COWLISHAW, | ) | |
| | ) | |
| (3)   DR. DONNA SHELTON, | ) | |
| | ) | |
| (4)   DR. AUDELL SHELBURNE, | ) | |
| | ) | |
| (5)   DR. PHILLIP BRIDGMON, | ) | |
| | ) | |
| (6)   DR. STEVE TURNER, and | ) | |
| | ) | |
| (7)   DR. WILLIAM RUGG, | ) | |
| | ) | |
| Defendants. | | |

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

**TO UNITED STATES DISTRICT JUDGE RONALD A. WHITE:**

Pursuant to Rule 56, F.R.C.P., Defendants, Northeastern State University (NSU),
Dr. Brian Cowlishaw, Dr. Donna Shelton, Dr. Audell Shelburne (Dept. Chair),
Dr. Phillip Bridgmon (Dean), Dr. Steve Turner (President), and Dr. William Rugg (Provost),
submit the following Motion for Summary Judgment.

## STATEMENT OF THE CASE

Dr. Leslie Hannah sues his former employer, NSU and his co-workers, claiming:
discrimination and retaliation under Title VII, §1981, violation of state constitutional rights,
interference/breach of contract, and negligence.  Defendants have answered denying the

allegations and asserting their Eleventh Amendment, sovereign and qualified immunity. The case is set for Jury Trial February 3, 2015.

## STATEMENT OF FACTS

1. Hannah was hired on July 23, 2009, as an Associate Professor of English in the Languages and Literature Department, beginning on January 13, 2010. (MSJ-Appx. pp. 78-80). Hannah was to promote the English and Cherokee programs. (MS-Appx. p.78). Hannah was given three-years toward tenure credit. (MSJ-Appx. p. 80).

2. Brian Cowlishaw and Bridget Cowlishaw assisted in the hiring of Hannah, although Hannah was Brian Cowlishaw's second choice. (MSJ-Appx. p. 145-¶3).

3. Approximately one-month after Hannah began employment at NSU, in February 2010, Hannah was appointed as the Department Chair. (MSJ-Appx. p. 3 146-¶3, 177). Brian Cowlishaw, who had been performing the duties as the Assistant Chair, was prevented from the position because his wife worked in the Department. Brian Cowlishaw resigned his position as Assistant Chair in February 2009. (MSJ-Appx. pp. 89, 145-¶3).

4. In July 2010, Hannah scheduled an August outdoor Department meeting by the river. Brian Cowlishaw, Bridget Cowlishaw, and Donna Shelton, aired their disagreement with the venue through posts on Facebook. (MSJ-Appx. pp. 91-108, 144-¶5, 181, 239). Along with additional posts, complaining of heat, mosquitos, dueling banjos, and suggesting an alternative venue in an air-conditioned bar, the posts consisted of:

A. In response to a comment of dreading the upcoming academic year, Shelton posted, 'Wonder if they sell body armor for use under regalia…' (MSJ-Appx. p. 95, 31, 188, 238, 240-241).

B. In response to comments complaining the camping trip sounded like a trip to hell, someone asked if a handbasket was needed. Bridget Cowlishaw posted, 'Nah, our chair will bring all the handbaskets we need. He's probably woven them himself.' (MSJ-Appx. p. 91).

C. When no one had heard how the camping trip went, Bridget Cowlishaw posted, 'Maybe they were all eaten by wolves.' (MSJ-Appx. p. 93, 185-187). The Cowlishaws, and Shelton were subordinate to Hannah. (MSJ-Appx. p. 191).

5. Hannah reported the posts and NSU investigated finding, though not racial, the posts had the potential to be interpreted as discriminatory, each professor was reprimanded. (MSJ-Appx. pgs. 91-133). Following their reprimand, the Cowlishaws offered to meet with Hannah, three times, to restore respect and trust; but, Hannah rejected each request. (MSJ-Appx. pgs. 125-126). Bridget Cowlishaw resigned her tenured position following the failed conciliation. (MSJ-Appx. pp. 127-128). Hannah left for his Fulbright Scholarship shortly thereafter returning just in time for the Spring semester.

6. In January 2011, Hannah complained to NSU Human Resources that NSU was unsafe for American Indians and stated that he intended to submit his resignation. (MSJ-Appx. p. 71). When asked to substantiate his statement, he advised NSU to do nothing further. (MSJ-Appx. p. 73). On the same day he made his unsubstantiated accusations, Hannah had lunched with Dean Westbrook and met with President Betz, yet, did not mention any threat. (MSJ-Appx. pp. 71-74). Hannah resigned from his position

as Department Chair. (MSJ-Appx. p. 203). Dr. Shelburne was hired by NSU the Summer of 2011, to fill the vacated position. (MSJ-Appx. p. 134-¶3).

7. In May 2011, Hannah accused Cowlishaw of causing graduate student dissension, as aired through Facebook posts; but, he did not substantiate his accusations. (MSJ Appx. pp. 75-76). Cowlishaw had friended Provost Tadlock after the camping trip reprimand in a show of good faith so that his post could be monitored. (MSJ-Appx. p. 146-¶5). One-month later, Hannah stated he saw a post where Cowlishaw called him a manipulative bastard. (MSJ-Appx. p. 77). That accusation was also unsubstantiated. (MSJ-Appx. pp. 216-218). At the same time of his unsubstantiated accusations, Hannah made remarks regarding Cowlishaw's helpfulness. (MSJ-Appx. p. 75). The accusations were not relayed to Cowlishaw. (MSJ-Appx. p. 146-¶6).

8. In August and November 2012, the scheduling of Cherokee classes was delayed, because Hannah was attempting to teach all of the classes, rather than use adjunct professors. (MSJ Appendix pp. 41-67, pp. 136-138-¶¶6-8, p. 141-¶15, 214-215). Dept. Chair Shelburne, counseled against the overload. (MSJ-Appx. p. 141-¶15). Also, a dispute arose in the Cherokee Legal History-4123 class, over Dr. Julia Coates, a contract adjunct professor and member of the Tribal Council. (MSJ-Appx. pp. 62-66 & 141-¶14). Hannah refused to accept Dr. Coates, threatening to teach the class himself or not have it at all. (MSJ-Appx. pp. 62-66, 209-213). Eventually, Dr. Stacy Leeds was recruited to teach the class. (MSJ-Appx. pp. 59-61). Hannah accused Dept. Chair Shelburne of taking the pay for the class when, in fact, Dr. Leeds received an honorarium and donated it to the

Native American Student Association.  (MSJ-Appx. p. 135-¶4).  When another dispute arose over the use of the NSU credit card, Hannah threw the credit card at a secretary and proceeded to throw a temper tantrum in his office.  The secretary stated that she felt threatened by Hannah.  (MSJ-Appx. pp. 46, 138-¶11, 208-209).

9.   In the Fall of 2012, Hannah submitted his application for tenure and early promotion, however, he filed his application late.  (MSJ-Appx. pp. 138-¶10, 204-205).  Nevertheless Shelburne, as Chair of the Department, forwarded the application. There were two meetings consisting of a Committee of tenured faculty members.  Cowlishaw did not participate in the first meeting, wherein the Committee discussed the candidates.  (MSJ-Appx. p. 146-¶7).  In the second meeting the Committee voted.  The vote was split 3/3 with 1 abstention.  Cowlishaw and Shelton voted to deny tenure.  (MSJ-Appx. p. 2-¶5).  Shelton stated she believed Hannah was hardworking but that he added to the turmoil in the Department by including students in Department disputes and Cowlishaw stated Hannah failed to meet the tenure criteria when compared to his first choice Kimberli Lee. (MSJ-Appx. pp. 145-¶3 & 146-¶7, 232-237). Dept. Chair Shelburne was non-committal in his assessment of Hannah. (MSJ-Appx. pp. 2-¶5, 138-¶10).

10.   Dean Bridgmon received the portfolio and votes from the Committee, and independently reviewed the application.   (MSJ Appendix pp. 1-3).  Based upon Hannah's lack of performance and exposure to the unsubstantiated claims against NSU faculty, Dean Bridgmon denied Hannah's application for tenure and early promotion.  (MSJ Appendix pp. 5-6).    Specifically, Dean Bridgmon considered the most recent accusation of racial discrimination by Hannah against Dept. Chair Shelburne.  (MSJ-Appx. pp. 2-¶5, 7, 24-27, and 138-¶10).    Hannah had falsely accused

Dept. Chair Shelburne of not forwarding his application because of Hannah's race. (MSJ-Appx. pp. 24-25, 7, 206). Following Dean Bridgmon's review of Hannah's application, he forwarded it on to then Provost, Dr. Rugg. (MSJ-Appx. p. 4). After review, Provost Rugg also approved the denial and similarly, President Steve Turner denied Hannah's application for tenure and early promotion as well. (MSJ-Appx. pp. 8-9).

11.  On April 12, 2013, Hannah was informed that his application for tenure and early promotion was denied. (MSJ Appendix p. 4). NSU policy provides that tenure disputes may be brought to the University Grievance Committee, within 14-days of notification of denial, along with a one-hundred dollar ($100.00) deposit. (MSJ Appendix pp. 10-23). Hannah failed to submit a grievance or a deposit. (MSJ-Appx. p. 174).

12.  In late April 2013, the NSU Threat Assessment Team convened. (MSJ Appendix pp. 68-70). The team placed Hannah on Administrative Leave, meaning he would not be allowed on the NSU campus, but would receive full pay for the remainder of his contract, through May 2014. (MSJ Appendix pp. 68-70).

### STANDARD OF REVIEW

The record is reviewed to determine if a genuine issue of material fact exists. *Reeves v. Sanderson Plumbing Products, I*nc., 120 S.Ct. 2097, 2110 (2000); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp*., 106 S.Ct. 1348, 1356 (1986). A fact is material if it affects the outcome of the case under governing law and a dispute over a material fact is genuine if a reasonable fact finder could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc*., 106 S.Ct. 2505, 2510 (1986). On the issue of qualified immunity, interlocutory appeal is proper when the district court's legal determination turns on

the materiality of facts relating to immunity. *Medina v. Cram*, 252 F.3d 1124, 1130 (10th Cir. 2001).

**<u>SUMMARY OF THE ARGUMENT</u>**

Hannah has not demonstrated NSU, a university that created the Cherokee Program he was hired to promote, discriminated against him because of his Cherokee heritage. Three Facebook posts by subordinates which could possibly be interpreted as racially insensitive, while at the same time, if viewed in context do not reference Native American culture, fail to create a work environment permeated with racial intimidation and ridicule. Nor do a half dozen other unsubstantiated social media posts. Even if a hostile environment existed, NSU responded reprimanding the professors. Nor has Hannah shown his tenure denial was motivated by race, because, similarly situated individuals were not treated more favorably than Hannah. Finally he has not shown that but for his discrimination complaint he would have been granted tenure because: possibly interpretable racially insensitive comments do not constitute statutorily protected activity necessary to trigger a retaliation claim and his tenure denial, which was two-years after his report, is to far removed in time to have caused his tenure denial. Hannah was denied tenure because he failed to fulfill the mission of the university, the Cherokee Program suffered under his leadership, and he alienated staff.

**<u>ARGUMENT AND AUTHORITY</u>**

In the case of *National R.R. Passenger Corp. v. Morgan*, 122 S.Ct. 2061, 2070 (2002), the court separated discriminatory employment claims into discrete acts and hostile environment claims, stating the proof varies with the claim. Defendants address Hannah's discrimination and retaliation claims in the same fashion, separating his claim of denied tenure and early promotion

as a discreet act of disparate treatment, from his claim of a hostile environment by way of social media posts.

## I.

### HANNAH HAS NOT ESTABLISHED A CLAIM OF DISCRIMINATION OR RETALIATION BY DISPARATE TREATMENT

An employee's Title VII disparate treatment claims of discrimination and retaliation, are analyzed under the *McDonnell Douglas* burden shifting methodology, as applied within the summary judgment, standard of review. *Reeves v. Sanderson Plumbing Products, Inc.*, 120 S.Ct. 2097, 2106 (2000), citing *McDonnell Douglas Corp. v. Green*, 93 S.Ct. 1817 (1973). That is, the employee must first establish a *prima facie* case. The burden then shifts to the employer to produce a legitimate reason for its actions. However, the employee always bears the ultimate burden of proving intentional discrimination. *Reeves* at 2106. The *McDonnell Douglas* methodology was designed to sharpen the inquiry into the elusive question of invidious discrimination in seemingly banal business decisions. *McDonnell* at 1823-1824; *St. Mary's Honor Center v. Hicks*, 113 S.Ct. 2742, 2746 (1993); *Texas Dept. of Community Affairs v. Burdine*, 101 S.Ct. 1089, 1094 (1981). The same formula and elements are applied to §1981 employment discrimination claims. *Drake v. City of Fort Collins*, 927 F.2d 1156, 1162 (10th Cir. 1991). Individuals are not liable under Title VII remedial scheme. *Haynes v. Williams*, 88 F.3d 898, 899 (10th Cir. 1996) (adopting rule of majority of circuits).

### A. HANNAH HAS NOT DEMONSTRATED A *PRIMA FACIE* CASE OF RACE DISCRIMINATION OR RETALIATION

The *prima facie* stage serves as an important function in function in employment discrimination litigation by eliminating the most common non-discriminatory reasons for an employer's actions. *Texas Dept. of Community Affairs v. Burdine*, 101 S.Ct. 1089, 1094 (1981). At the *prima facie* stage of a claim, an employee need only make a minimal showing to set sail to

a rebuttable presumption of discrimination or retaliation. *Texas Dept. of Community Affairs v. Burdine*, 101 S.Ct. 1089, 1094 (1981); *Sabourin v. University of Utah*, 676 F.3d 950, 958 (10th Cir. 2012).

The elements necessary for a *prima facie* claim of discrimination are: (1) the employee is a member of a protected class, (2) similarly situated employees outside the protected group were treated more favorably under comparable circumstances, and (3) the employee suffered an adverse action. *Orr v. City of Albuquerque*, 417 F.3d 1144, 1149 (10th Cir. 2005). A similarly situated employee is one who shares the same supervisor and subject to the same standards governing performance along with other relevant employment circumstances. *Green v. New Mexico*, 420 F.3d 1189, 1194-1195 (2005).

The elements of a *prima facie* claim of retaliation differ from a discrimination claim. In a retaliation claim, the employee must demonstrate: (1) he engaged in a protected activity; (2) he suffered a materially adverse employment action; and (3) that there is a casual connection between his protected activity and the employer's adverse employment action. *E.E.O.C. v. PVNF, L.L.C.*, 487 F.3d 790, 803 (10th Cir. 2007). A protected activity requires a reasonable good-faith belief that the complaint was protected opposition. *Clark v. Cache Valley Elec. Co.*, 573 Fed. Appx. 693, 700-701 (10th Cir. 2014). A casual connection between the protected activity and the retaliatory adverse action is generally shown by temporal proximity between the protected speech and the adverse action or a showing similarly situated individuals were treated more favorably. *Clark County School Dist. v. Breeden*, 121 S.Ct. 1508, 1511 (2001) (temporal proximity to establish *prima facie* case of causality must be very close in time);

*Antonio v. Sygma Network, Inc.*, 458 F.3d 1177, 1182 (10th Cir. 2006) (retaliatory motive could be inferred from disparate application among similarly situated employees).

Defendants assert Hannah has failed to demonstrate he engaged in a protected activity that caused his termination or that similarly situated employees were treated more favorably. That is, Hannah's complaint in regard to the Facebook posts is not a protected activity, his termination two-years after his report did not cause his termination, and he has not shown individuals, of a different race or under similarly situated circumstances to his were granted tenure and/or early promotion.

First, Hannah's race discrimination and retaliation claims, fail at the *prima facie* stage because he has not shown similarly situated individuals were treated more favorably. (MSJ-Appx. p. 207). NSU has denied tenure and promotion to individuals outside of the protected group and granted tenure to other Native American professors. (MSJ Appx. pp. 2-¶6, 8-9). For instance, two individuals who were candidates with Hannah were both denied promotion at the same time as Hannah. Neither of these individuals made complaints of discrimination or retaliation, and neither is Native American. (MSJ Appendix pp. 2-¶6; pp. 8-9). Also, Hannah's position as Cherokee Coordinator has been filled by Harry Oosahwee, who is Native American, and who speaks Cherokee as his primary language. (MSJ-Appx. p. 3-¶7).

Second, Hannah's retaliation claim fails at the *prima facie* stage because he has not shown he engaged in a statutorily protected expression. Hannah's report of the social media posts on Facebook, fails both the subjective and objective tests of a good-faith reasonable belief the NSU was engaged in racial discrimination. Hannah reported three posts. Hannah states he interpreted the regalia post as academic (MSJ Appendix pp. 95, 109). Shelton meant it as

academic regalia and viewed in context, the statement is in response to a comment about the academic year. (MSJ-Appx. pp. 95). Moreover, the concept that the comment related to Powwow regalia was made with a chuckle and half-jokingly. (MSJ-Appx. p. 109). Both Cowlishaw and Shelton are subordinates in the Department that Hannah chaired. (MSJ-Appx. p. 146-¶5).

Hannah found two additional social media posts on Facebook offensive, though he made no mention of the two additional posts in his original e-mail. (MSJ-Appx. pp. 109, 91-133). The second post, about going to hell in a handbasket makes no reference to Native American culture. (MSJ-Appx. p. 91). Bridget Cowlishaw meant this as an observation that Hannah does everything himself without consideration for others. (MSJ-Appx. pp. 251-253) The third comment was again made by Bridget Cowlishaw in response to an inquiry on how the Department camping trip went. Bridget Cowlishaw posts, "Maybe they were all eaten by wolves." (MSJ Appendix p. 93). For her part, Bridget Cowlishaw states she was referencing wolves and was unaware of Hannah's membership in the Wolf Clan. (MSJ-Appx. p. 250) In summary, a review of each of the comments, does not suggest subjectively or objectively Native American discrimination. Hannah did not initiate the report as employment discrimination toward him, but only as a half-joking interpretation. (MSJ-Appx. pp. 188-189). *Deboard v. Mercy Health System of Kansas, Inc.*, 737 F.3d 642, 654-655 (10th Cir. 2013) (that a victim did not perceive harassment suggests it is not harassment). Further, in context, all of the comments do not reflect discrimination, but rather, the faculty disillusionment with an outdoor meeting near the river in August. Hannah has not demonstrated these comments, of a one-time event, by his subordinates, out of his presence, are a good-faith, reasonable belief of racial harassment at NSU. That is, the same factors, which disabuse the statements as

harassment, apply to the belief that a report of harassment is objectively reasonable; through an employee need not show discrimination. *Held v. Ferrellgas, Inc.*, 505 Fed. Appx. 687, 689-691 (10th Cir. 2012); *Clark County School Dist. v. Breeden*, 121 S.Ct. 1508, 1510 (2001).

Finally, Hannah's *prima facie* case of retaliation also fails because he has not demonstrated his report caused his denial of tenure and early promotion. Hannah was denied tenure and early promotion, two-years after his initial complaint. (MSJ-Appx. pp. 109; 4). Shelton stated she did not consider the earlier complaint and Hannah confirmed he heard little from Shelton after the complaint. (MSJ-Appx. pp. 201-202). Cowlishaw also stated he purposefully removed the earlier complaint from his consideration and did not participate in the first Committee meeting, so as, not to influence other voting members. (MSJ-Appx. p. 146-¶7). Prior to the vote, Cowlishaw had attained tenure and Hannah had remarked on Cowlishaw's helpfulness. (MSJ-Appx. pp. 75, 146-¶2). Any subsequent complaints were unknown to Cowlishaw. (MSJ-Appx. pp. 146-¶¶6; 7). In *Clark County School Dist. v. Breeden*, 121 S.Ct. 1508, 1511 (2001), the court counseled an adverse action taken 20-months after the protected activity, even with knowledge, suggests no causality at all. Further, neither Dept. Chair Shelburne nor Dean Bridgmon, each arriving at NSU following the dispute, knew of the earlier discrimination complaints. (MSJ-Appx. pp. 2-¶5, 143-¶20).

**B. NSU'S LEGITIMATE REASONS FOR DENYING HANNAH TENURE AND EARLY PROMOTION**

If an employee demonstrates a *prima facie* case, then under the *McDonnell Douglas* methodology, the tide changes, shifting the burden to the employer to demonstrate a legitimate non-discriminatory reason for its actions. The employer's burden is one of production, not persuasion, and can involve no credibility assessment.

*Reeves v. Sanderson Plumbing Products, Inc.*, 120 S.Ct. 2097, 2106 (2000), quoting *St. Mary's Honor Center v. Hicks*, 113 S.Ct. 2742, 2748-2749 (1993).

A tenure decision includes global considerations of service, teaching, and academics. (MSJ-Appx. pp. 2-¶5). First, Hannah failed to submit his application for tenure and early promotion by the deadline. (MSJ-Appx. p. 138-¶10). Nevertheless, Dept. Chair Shelburne accepted Hannah's untimely filed application and presented them to the Committee for consideration. (MSJ-Appx p. 138-¶10). Dept. Chair Shelburne had replaced Hannah after Hannah abdicated the Department Chair duties. (MSJ-Appx. p. 134-¶3). Dept. Chair Shelburne saw Hannah's alienation of staff, unprofessional and irrational behavior, ineffective class scheduling and programming and a general lack of leadership in Hannah's management of the Department as chair and in the Cherokee Program. (MSJ-Appx. pp. 135-138-¶¶ 5-9; pp. 138-143-¶¶11-19). Dean Bridgmon in doing a second independent review denied tenure and early promotion, due to Hannah's failure to lead the Department and the Cherokee Program. (MSJ-Appx p. 2-¶5; pp. 5-7). Specifically he resigned both the Chair position and later the Cherokee Program Coordinator positions over disputes. (MSJ-Appx. pp. 67, 220). Also, he falsely accused the Chair of not forwarding his portfolio and of being paid for a class he did not teach. (MSJ-Appx. pp. 2-¶5, 135-¶4, 59-61). Hannah failed to perform the job he was hired to do.

C.    **HANNAH FAILED TO SHOW INTENTIONAL DISCRIMINATION OR RETALIATION PRETEXT**

Once the employer presents a legitimate reason, the buoyant presumptions set afloat by the employee in the *prima facie* stage are rebutted. In the final stage of the *McDonnell Douglas* methodology, an employee's ultimate burden is to show his protected class was a motivating factor in his termination. *University of Texas Southwestern Medical Center v. Nassar*, 133 S.Ct.

2517, 2526 (2013) (Title 42 U.S.C.A. §2000(e)(2)(m) status based discrimination uses lesser causation standard). That is, to show the employer's explanation for its actions is a pretext for discrimination. *E.E.O.C. v. Picture People, Inc.*, 684 F.3d 981, 990 (10th Cir. 2012). In a retaliation claim, the employee's ultimate burden is more onerous, it is to demonstrate that, but for the protected activity, the adverse action would not have ensued. *University of Texas Southwestern Medical Center v. Nassar*, 133 S.Ct. 2517, 2534 (2013). Context and circumstances matter in analyzing the retaliatory nature of an employer's conduct. *Burlington Northern and Santa Fe Ry. Co. v. White*, 126 S.Ct. 2405, 2415 (2006).

In this case, Hannah acknowledges his false accusation against Dept. Chair Shelburne and his unprofessional conduct toward Julia Coates. (MSJ-Appx. pp. 205-206, 212, 219). He also admits he never substantiated his accusations. (MSJ-Appx. pp. 197-200, 217, 221-222). In contrast, NSU's response to Hannah's substantiated complaint, though it was only possibly racial, was swift, causing the resignation of a tenured professor. (MSJ-Appx. pp. 118-122; 127-128). Hannah has not demonstrated discrimination or a pre-text for discrimination.

## II.
### HOSTILE WORK ENVIRONMENT

### A.    HANNAH HAS NOT ESTABLISHED A HOSTILE WORK ENVIRONMENT

A hostile work environment claim, is one in which the workplace is permeated with discriminatory intimidation and ridicule, sufficiently severe or pervasive to be abusive to a reasonable individual. *Harris v. Forklift Systems, Inc.*, 114 S.Ct. 367, 370 (1993). A hostile work environment does not require a showing of tangible employment action. *Meritor Sav. Bank, FSB v. Vinson*, 106 S.Ct. 239*, 2406 (1986). In making the determination of what a hostile work environment is, the court considered all of the circumstances, such as

frequency and severity of conduct, and whether it was physically threatening or humiliating. *Harris* at 370.

In this case, Hannah has failed to demonstrate a hostile work environment. Hannah's claims are: the camping Facebook posts referenced above in Section I (A), and that he was told of approximately additional half a dozen unsubstantiated posts by Cowlishaw, one in which Hannah is referred to as a "fucking Indian," another referring to Hannah as a "manipulative bastard," and finally, one in which Cowlishaw responds, "lol" when someone suggests throwing Hannah in the river to see if he floats.[1]  The accusations are unsubstantiated. (MSJ-Appx. pp. 197-200, 217, 221-222).  Notably, in the university investigation, a graduate student reported Hannah had told her of the camping posts and had embellished the posts with racial animus to sow discord. (MSJ-Appx. pp. 129-132, 192-196).   Even assuming the comments as true, these instances, over a three-year period by a subordinate or co-worker, fail to demonstrate a work environment permeated with intimidation and ridicule.

**B.**   **THE CONDUCT OF SHELTON AND COWLISHAW, IS INSUFFICIENT TO IMPUTE VICARIOUS LIABILITY TO NSU**

If a hostile work environment is established, liability is imputed to the employer through a theory of vicarious liability.  *Faragher v. City of Boca Raton*, 118, S.Ct. 2275, 2292-2293 (1998).  Harassment of a supervisor imputes liability to the employer, subject to the defense that the employer took reasonable care to prevent and to promptly correct the harassing behavior, and the employee unreasonably failed to take advantage of the preventative and corrective opportunities.   *Faragher v. City of Boca Raton*, 118 S.Ct. 2275, 2293 (1998);

---

[1]        Cowlishaw denies the accusations against him (MSJ-Appx. p. 146-¶6), but is cognizant the Court must draw all reasonable inferences in favor of the Plaintiff; although, the Court need not rely on conclusions or inadmissible evidence.     *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1964-1965 (2007); *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949, 1950 (2009); *Cotton v. Costco Wholesale Corp.*, 2014 WL 29108*4 (D. Ks) (statements that another employee heard another employee made racially derogatory comments is inadmissible hearsay, that cannot be relied upon at summary judgment).

*Burlington Industries, Inc. v. Ellerth*, 118 S.Ct. 2257, 2270 (1998). The hostile work environment methodology effectuates the Congressional intent of conciliation, rather than litigation, by balancing the imposition of vicarious liability with the preventative and remedial measure defense, thereby, encouraging the employer in its obligation to prevent violations and the employee to report harassment before the environment becomes severe and pervasive. *Ellerth* at 2270; *Faragher* at 2292.

It is the status of the harasser as a supervisor that determines if the hostile work environment liability can be vicariously imputed to the employer; while it is the severity and pervasiveness of the hostility, which determines if the claim is actionable. *Faragher* at 2284; *Faragalla v. Douglas County School Dist. RE1*, 411 Fed. Appx. 140, 154 (10th Cir. 2011). A supervisor, for the purpose of imposing vicarious liability, is defined as; an employee that is empowered by the employer to take tangible employment actions, that effect a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits. *Vance v. Ball State University*, 133 S.Ct. 2434, 2443, 2454 (2013). If the intangible action is by a non-supervisory employee, then liability is not assessed by way of vicarious liability; liability then requires a showing of the employer either being aware, or should have been aware of the co-employee's conduct. *Curran v. AMI Fireplace Co., Inc.*, 163 Fed. Appx. 714, 719 (10th Cir. 2006) citing *Faragher* at 2284.

Other than Hannah's denial of tenure and early promotion, which is a disparate treatment claim, all of Hannah's allegations of discriminatory or retaliatory conduct are against his subordinates or co-workers, Cowlishaw and Shelton. (MSJ-Appx. p. 191) Hannah has not clamed racial comments, ridiculing or intimidating him by Dept. Chair Shelburne or above.

Hannah may not impute liability for a hostile work environment to NSU for comments that were made by subordinates or co-workers, particularly when NSU reprimanded for the possibility of racial insensitivity and Hannah failed to substantiate subsequent claims.

**C.     NSU IS RELIEVED OF LIABILITY BY ITS MEASURES PREVENTING AND REMEDYING HARASSMENT**

It is the imputation of vicarious liability which gives genesis to the preventative and remedial measures defense of the employer. *Faragher* at 2292-2293. The defense offsets the imposition of vicarious liability against the employer with incentives for the employer to recognize its obligation to prevent discrimination. *Faragher* at 2293. Preventative measures include: adoption and dissemination of a harassment policy. *Debord v. Mercy Health System of Kansas, Inc.*, 737 F.3d 642, 654 (10th Cir. 2013). Remedial measures require prompt investigation, once proper notice of harassment allegations are received. *Helm v. Kansas*, 656 F.3d 1277, 1290 (10th Cir. 2011). The appropriateness of the employer's response is based upon what is reasonable to the circumstances, depending in part, on the gravity of the alleged harassment. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 675-676 (10th Cir. 1998); *McPherson v. HCA-HealthOne, L.L.C.*, 202 F.Supp. 2d 1156, 1175 (D. Colo. 2002).

The NSU prohibits discrimination. (MSJ-Appx. pp. 153-158). The Handbook is provided to all faculty when they begin employment and is also available on the Internet. NSU is a campus-rich in Native American environment and history since its inception in 1851. (MSJ-Appx. p. 1-¶3) NSU has appropriate preventative measures, prohibiting discrimination.

As recited above in Section I (A), NSU promptly responded to Hannah's complaint about the Facebook camping trip posts. The initiation of an investigation on the other complaints by Hannah did not mature, because when asked, Hannah failed to substantiate the claims he stated

he heard from other individuals. (MSJ-Appx. pp. 197-200). NSU took prompt remedial measures.

**D.     HANNAH FAILED TO AVAIL HIMSELF OF NSU'S REMEDIAL MEASURES**

An employee has a responsibility and obligation to take advantage of the preventative and remedial measures provided by the employer. *Faragher* at 2293-2294; *Pinkerton v. Colorado Dept. of Transp.*, 563 F.3d 1052, 1063 (10th Cir. 2009). An employee's failure to fulfill his or her obligation of reasonable care to avoid harm is not limited to showing an unreasonable failure to use any complaint procedure provided by the employer. *Faragher* at 2293. An employee's unreasonable failure to consult the employer's manual for reporting discrimination, suggests lack of harassment. *Debord v. Mercy Health System of Kansas, Inc.*, 737 F.3d 642, 655 (10th Cir. 2013).

In this case, Hannah has failed to avail himself of NSU's remedial measures. For instance, following the camping Facebook posts; each of the professors involved was reprimanded. (MSJ-Appx. pp. 118-122). The professors invited conciliation inviting Hannah to their home for dinner, inviting Hannah to meet them at Granny's (a local establishment), and lastly, asking him to name what could be done to restore mutual trust and respect. (MSJ-Appx. pp. 125-126). Each time Hannah refused. Hannah also walked out of the NSU mediation meeting. (MSJ-Appx. p. 160). His other reports were unsubstantiated hearsay and he told the university to drop it. (MSJ-Appx. pp. 71-74). At the same time, Hannah had been at meetings with the Provost and President, but failed to mention his fearfulness. (MSJ-Appx. pp. 71-74). Hannah also made false accusations against Dept. Chair Shelburne. (MSJ-Appx. pp. 24-25, 7, 135-¶4, 138-¶7). And, though Hannah complains of his tenure and early promotion denial, the Handbook provides a specific process for contesting tenure disputes.

Hannah failed to provide the formal written grievance and deposit, required, to schedule the grievance process. (MSJ-Appx. p. 174).

In summary, Hannah has failed to illustrate a hostile work environment. Taking the totality of circumstances, in a light most favorable to Hannah, his allegations of isolated instances of harassment by subordinates or co-workers fails to illustrate a hostile work environment permeated with racially based intimidation and ridicule. Furthermore, NSU responded appropriately to Hannah's accusations; while at the same time, Hannah did not exercise reasonable care to avoid harm.

### III.
### HANNAH'S CLAIMS ARE BARRED BY THE ELEVENTH AMENDMENT AND QUALIFIED IMMUNITY,

**A.     NSU IS ENTITLED TO ELEVENTH AMENDMENT IMMUNITY**

The United States Supreme Court has held that an un-consenting state is immune from suit brought in federal court by its own citizens. U.S.C.A. CONST Amend. XI; *Alden v. Maine*, 119 S.Ct. 2240, 2246 (1999); *Will v. Michigan Dept. of State Police*, 109 S.Ct. 2304, 2312 (1989); *Ellis v. University of Kansas Medical Center*, 163 F.3d 1186, 1196 (10th Cir. 1998) (Congress did not abrogate Eleventh Amendment immunity through §1981 or §1983). Moreover, the State of Oklahoma has explicitly preserved its Eleventh Amendment and sovereign immunity. Okla. Stat. Title 51 §152.1; *Elwell v. Oklahoma, ex rel., Bd. of Regents of University of Oklahoma*, 693 F.3d 1303, 1315 (10th Cir. 2012). NSU has Eleventh Amendment immunity from Hannah's §1981 claims of sovereign immunity from his state law claims.

**B.     HANNAH'S CLAIMS AGAINST INDIVIDUAL DEFENDANTS UNDER §1981, FAILS TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED**

Title 42 U.S.C.A. §1981 does not provide for an independent cause of action against individual defendants who are state actors. *Koppenhaver v. United School Dist. No. 500*, 2013

WEL 1704917*4 (D. Ks) (citing *Jett v. Dallas Independent Sch. Dist.*, 109 S.Ct. 2702, 2721 (1989); *Mitchem v. Edmond Transit Management, Inc.*, 2012 WL 2370669*69 (W.D. Okla); *Taylor v. City of Bixby, Okla.*, 2012 WL 6115051*4 (N.D. Okla); *Shoals v. City of Broken Bow, Okla.*, 2011 WL 3847202*1 (E.D. Okla). More than a pleading technicality, §1983 claims, unlike Title VII, cannot rely on *respondeat superior* or cumulative negligence, to demonstrate intentional discrimination by an individual. *Monell v. Department of Social Services*, 98 S.Ct. 2018, 2036 (1978) (§1983 liability cannot be based upon a theory of *respondeat superior*); *Faragher v. City of Boca Raton*, 118 S.Ct. 2275, 2292-2293 (1998) (limited vicarious liability imposed on employer in Title VII claims); *National Railroad Passenger Corp. v. Morgan*, 122 S.Ct. 2061, 2073 (2002) (hostile environment by its nature is composed of a series of intangible events, each of which along, do not constitute discrimination). A hostile work environment is cumulative, so each individual action is not discriminatory in itself; therefore the hostile environment is inapplicable for individual liability. *Lawrence v. School Dist. No. 1*, 560 Fed. Appx. 791 (10th Cir. 2014) citing *Jett v. Dallas Independent School Dist.*, 109 S.Ct. 2702, 2722-2733 (1989). Hannah's §1981 claims against the individuals are subject to dismissal because liability for an environment is composed of a series of events and then the totality imposed on an employer not an individual.

## C.    DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY

Though some elements of Title VII claims parallel a §1981 or §1983 claim, a plaintiff asserting claims of employment discrimination or retaliation against an individual, must overcome an individual's qualified immunity, showing the intentional violation by the individual of a clearly established constitutional right. *Coleman v. Houston Independent School Dist.*,

113 F.3d 528, 533-534 (5th Cir. 1997). That is, the individual must consciously acquiesces in the harassment. *Murrell v. School Dist. No. 1 Denver*, 186 F.3d 1238, 1250 (10th Cir. 1999).

Qualified immunity may not be overcome by simply stating a particular right (i.e., the right to free speech was clearly established and any reasonable person would know, not to violate it). *Anderson v. Creighton*, 107 S.Ct. 3034, 3038, 3041 (1987). Such a superficial pleading, converts qualified immunity into an unqualified immunity. *Anderson* at 3039; *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1945 (2009). Under qualified immunity offered to a defendant, plaintiff must demonstrate the individual's conduct was objectively unreasonable. *Harlow v. Fitzgerald*, 102 S.Ct. 2727, 2738 (1982); *Siegert v. Gilley*, 111 S.Ct. 1789, 1793-1794 (1991). An official's actions are objectively reasonable, unless all reasonable officials in the defendant's circumstances would have known the defendant's conduct violated the United States Constitution ("U.S. Constitution"). *Anderson v. Creighton*, 107 S.Ct. 3034, 3038, 3041 (1987). When making a determination of qualified immunity, the decisive factor is not, did the official error, but rather, could he have believed his actions were legal. *Malley v. Briggs*, 106 S.Ct. 1092, 1096 (1986). The question of reasonableness is not viewed from the "20/20" vision of hindsight, but from the official's perspective at the time and under the circumstances as they evolved. *Hunter v. Bryant*, 112 S.Ct. 534, 536-537 (1991). The purpose of immunity is to balance individual claims with the social costs of expensive litigation and diversion of public official's energy from other public issues. *Filarsky v. Delia*, 132 S.Ct. 1657, 1665 (2012); *Harlow v. Fitzgerald*, 102 S.Ct. 2727, 2736, 2738 (1982). Defendants assert, Hannah has not demonstrated their individual intentional discrimination or overcome their qualified immunity.

In this case, President Turner and Provost Rugg had no participation other than the approval of the tenure recommendation forwarded to them. Dean Bridgmon and Dept. Chair Shelburne independently reviewed the tenure portfolio and found Hannah's performance unworthy of tenure. (MSJ-Appx. pp. 1-3, 134-144). Cowlishaw and Shelton both made their consideration on the criteria set in the manual. Cowlishaw went so far as to remove himself from discussion. (MSJ-Appx. pp. 146-147). Additionally, their posts even if racial animus is assumed, were not meant so. Hannah has not overcome each individual's qualified immunity.

## IV.
### HANNAH DOES NOT HAVE A CONSTITUTIONAL PROPERTY RIGHT TO TENURE

Hannah alleges that NSU deprived him of his inherent rights granted in Article II, §2 of the Oklahoma Constitution ("OK Constitution"). The OK Constitution provides: All persons have the inherent right to life, liberty, and the pursuit of happiness, and enjoyment of the gains of their own industry.[2] The enjoyment of the gains of industry is a property right. *State, ex rel., Whetsel v. Wood*, 248 P.2d 612, 615 (Okla. 1952). To demonstrate a violation of procedural or substantive due process, an employee must first show a property interest in continued employment. *Potts v. Davis County*, 551, F.3d 1188, 1192 (10th Cir. 2009). Property interests are not created by the Fourteenth Amendment, but rather, defined by state law, which secures benefits and supports claims to those benefits. *Board of Regents of State Colleges v. Roth*, 92 S.Ct. 2710, 2709 (1972). Untenured professors in the State of Oklahoma do not possess a cognizable property interest in their continued employment. *Bunger v. University of Oklahoma Bd. of Regents*, 95 F.3d 897, 990

---

[2] Defendants rely in part on federal law, because the rights embodied in the OK Constitution are similar to the rights first announced in the U.S. Constitution *Eastern Oklahoma Bldg. & Const. Trades Council v. Pitts*, 82 P.3d 1008, 1014 (Okla. 2003) (Due process protections are the same under the OK Constitution and Fourteenth Amendment of the U.S. Constitution).

(10th Cir. 1996).    Hannah does not have a property interest in tenure; he has not been denied Oklahoma constitutional rights.

## V.
### HANNAH'S TORTIOUS INTERFERENCE/BREACH OF CONTRACT AND EMOTIONAL DISTRESS CLAIMS ARE SUBJECT TO DISMISSAL

An individual cannot be liable for interfering with a contract, while acting in a representative capacity for a party to the contract.  *Voiles v. Santa Fe Minerals, Inc.*, 911 P.2d 1205, 1210 (Okla 1996); *Lindsy v. Brinkler Intern. Payroll Co., L.P.*, 2011 WL 2493047*4 (W.D. Okla).  In this particular case, the individuals are employees and therefore agents of NSU, they cannot therefore interfere in their own contract. Also, a State employee, acting within the scope of employment, is immune from liability, relieving State employees of private liability for tortious conduct.  *Shepard v. CompSource Oklahoma*, 209 P.3d 288, 294 (Okla 2009). Hannah avers the individuals were acting within the scope of their employment.   Furthermore, a formal tenure policy serves as an express contract, barring claims of an implied contract. *Jones v. University of Central Oklahoma*, 2014 WL 582949 at *3 (W.D. Okla 2013) (applying NSU policy as an express contract).  For the same reasons, Hannah has not demonstrated a hostile environment he also has failed the higher burden of extreme and outrageous conduct necessary for emotional distress.  *Durham v. McDonald's Restaurants of Oklahoma*, 256 P.3d 64, 67 (2011). Finally, Hannah does not have the statutory prerequisites necessary for a negligence claim against the State or its employees.  Okla. Stat. Title 51 §156.  Hannah's contract claims are subject to dismissal.

## CONCLUSION

In summary, though the court may not weigh the evidence or make credibility determinations, if the record conclusively proves a non-discriminatory reason or there is only a

weak fact issue as to the truth of the employer's explanation for its action, then there is no genuine fact dispute for summary judgment. *Reeves v. Sanderson Plumbing Products, I*nc., 120 S.Ct. 2097, 2109 (2000); *Odom v. Potter*, 379 Fed. Appx. 740, 743-744 (10th Cir. 2010). In this case, Hannah opens his Amended Complaint by asking; why a university would deny tenure to a renowned scholar and concludes that it must be racial animus. Defendants answer the query: scholarship is but one criterion for tenure. Service, teaching, and common respect for colleagues, students, and the institution are equal considerations. Considerations, Hannah failed to contemplate in his question, and the uncontroverted facts demonstrate Hannah ignored in his professional conduct. Hannah has failed to demonstrate NSU with its rich Cherokee history or its staff discriminated against him. Even assuming Hannah's equation is correct, business decisions are not subject to second guessing and evidence, suggesting in hindsight, the decision was not prudent is not evidence of improper motive. *Furr v. Seagate Technology, Inc.*, 82 F.3d 980, 986 (10th Cir. 1996). Defendants move for judgment on their behalf on all claims.

Respectfully submitted,

s// Susan E. Werner

SUSAN E. WERNER, OBA# 9482
Assistant Attorney General, Litigation Unit
OFFICE OF THE OKLAHOMA ATTORNEY GENERAL
313 Northeast 21st Street
Oklahoma City, Oklahoma 73105
Telephone: (405) 521-3921
Facsimile: (405) 521-4518
susan.werner@oag.ok.gov

*Attorney for the Defendants*

## CERTIFICATE OF MAILING

This is to certify that on the 15th day of December, 2014, a true and correct copy of the above and foregoing *Defendants' Motion for Summary Judgment*, was electronically transmitted to the Clerk of the Court for the United States District Court for the Western District of Oklahoma using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants, and/or mailed via United States Postal Service postage fully prepaid thereon, and/or via electronic mail to the following interested parties:

Mr. Anthony L. Allen, Esquire
Ms. Alexandra Masters, Esquire
ALLEN & WISNER
101 West Broadway
Muskogee, Oklahoma 74401
Anthony@oklahomaslawfirm.com

*Attorneys for Plaintiff, Dr. Leslie Hannah*


s// Susan E. Werner

SUSAN E. WERNER