# IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| DR. LESLIE HANNAH,<br><br>     Plaintiffs,<br><br>v.<br><br>DR. BRIAN COWLISHAW,<br>DR. DONNA SHELTON,<br>DR. D. AUDELL SHELBURNE,<br>DR. PHILLIP BRIDGMON,<br>DR. STEVE TURNER,<br>DR. WILLIAM RUGG, and<br><br>NORTHEASTERN STATE UNIVERSITY,<br><br>     Defendants. | Case No. CIV-14-074-RAW |

## ORDER & OPINION

On February 5, 2015, the court entered an Order granting in part and denying in part Defendants' motion for summary judgment.[1]  The court dismissed all claims against Northeastern State University (hereinafter "NSU") except the Title VII claims.  The court denied qualified immunity to the individual Defendants on the § 1981 claims.  The state claims against the individual Defendants also remained.  The individual Defendants appealed the court's denial of qualified immunity.

On February 22, 2016, the court received the mandate from the United States Court of Appeals for the Tenth Circuit, reversing and remanding this action.  The Tenth Circuit held that Plaintiff's § 1981 claim in his First Amended Complaint fails to state a claim for relief and directed that this court dismiss that claim and allow Plaintiff leave to amend his complaint to add

---

[1] Defendants had not filed a separate motion to dismiss.

a § 1983 claim premised on the alleged violation of his § 1981 rights.[2]  Accordingly, the court

hereby dismissed the § 1981 claim and allowed Plaintiff an opportunity to amend.  Plaintiff filed

his Second Amended Complaint on April 12, 2016, adding a § 1983 claim premised on the

alleged violation of his § 1981 rights, in accordance with the Tenth Circuit Decision.

In the Second Amended Complaint, Plaintiff includes the following claims for relief: (1)

violation of 42 U.S.C. § 1983 against the individual Defendants; (II) gross negligence against the

individual Defendants; (III) tortious interference against the individual Defendants; (IV) racial

discrimination in violation of Title VII against NSU; and (V) retaliation for exercise of rights

against NSU.[3]  Docket No. 75.

Now before the court are Defendants' motion to dismiss [Docket No. 77] and motion for

summary judgment [Docket No. 84].[4]  In both motions, the individual Defendants argue, *inter

alia*, that they are entitled to qualified immunity on the § 1983 claims.  In its Decision, the Tenth

Circuit reminded this court that it must provide an individual assessment of each defendant's

conduct and culpability when ruling on entitlement to qualified immunity.  For the reasons set

---

[2] The Tenth Circuit also noted in its Decision that Plaintiff "may include new factual allegations in an amended complaint asserting a § 1983 claim."  Defendants point out that Plaintiff did not take advantage of this opportunity and that his Second Amended Complaint is essentially the same as his previous Complaint with only the substitution of the statute. Defendants are essentially correct.  In his "Statement of Facts" section, Plaintiff changed the wording slightly in some allegations, rearranged a few and added what is now paragraph 31.

[3] Plaintiff does not include in his Second Amended Complaint the claims that were previously dismissed by this court – specifically, the Oklahoma constitutional and state law claims against NSU.

[4] The only issue on appeal was whether the individual Defendants were entitled to qualified immunity.  As the complaint has been amended to properly include § 1983 claims against the individual Defendants, and in accordance with the Tenth Circuit's guidance, the court herein reevaluates those claims.

The court recognizes that Defendants are also seeking dismissal and/or summary judgment as to the state claims against the individual Defendants and the Title VII claims against NSU.  As the court noted in its February 5, 2015 Order, this is a close case.  Viewing the evidence in the light most favorable to Plaintiff and for the reasons stated in the February 5, 2015 Order, those rulings remain.

forth below, the motion for summary judgment is hereby granted as to the § 1983 claims against the individual Defendants.

## Summary Judgment & Qualified Immunity

Summary judgment will be granted if there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The court's function is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). In applying the summary judgment standard, the court views the evidence and draws reasonable inferences therefrom in the light most favorable to the nonmoving party. Burke v. Utah Transit Auth. & Local 382, 462 F.3d 1253, 1258 (10th Cir. 2006). At this stage, however, Plaintiff may not rely on mere allegations, but must have set forth, by affidavit or other evidence, specific facts in support of his complaint. Id.

When a defendant raises a qualified immunity defense in response to a motion to dismiss or a motion for summary judgment,[5] the burden shifts to the plaintiff and the court employs a two-part test. Morris v. Noe, 672 F.3d 1185, 1191 (10th Cir. 2012); Brown v. Montoya, 662 F.3d 1152, 1164 (10th Cir. 2011). Plaintiff must show that: (1) the defendant violated a constitutional right, and (2) the constitutional right was clearly established at the time of the defendant's alleged misconduct. Id. Plaintiff must establish both prongs to defeat a qualified immunity defense. Id. The court has discretion to decide which of the two prongs of to address first in light of the circumstances of the case. Brown, 662 F.3d at 1164. Only if a plaintiff first

---

[5] "The legally relevant factors for a qualified immunity decision will be different at the summary judgment state – no longer can the plaintiff[] rest on facts as alleged in the pleadings." Stonecipher v. Valles, 759 F.3d 1134, 1148, n.9 (10th Cir. 2014).

meets this two-part test does the defendant bear the traditional summary judgment burden to show that there are no genuine disputes of material fact and that he or she is entitled to summary judgment as a matter of law. <u>Kock v. City of Del City</u>, 660 F.3d 1228, 1238 (10th Cir. 2011).

**<u>Undisputed Material Facts and Analysis</u>**

The court first lists some general undisputed material facts.[6] Next, the court individually examines the undisputed material facts as to each individual Defendant and determines whether Plaintiff has met his burden as to their defense of qualified immunity.

NSU hired Plaintiff in 2009 to begin in January of 2010 as an Associate Professor of English in the Languages and Literature Department. Docket No. 33, Exh. 2, pp. 78-82. Plaintiff was to promote the English and Cherokee Programs. <u>Id.</u> He was given three years toward tenure to begin in the Fall 2010 semester. <u>Id.</u> In February 2010, shortly after he was hired, Plaintiff became the department Chair. <u>Id.</u> at 83 and 146.

On January 15, 2010, Dr. Cowlishaw posted on Facebook: "They're making a [expletive] indian (sic) chair." Docket No. 41, Exh. 3, p. 1. Dr. Cowlishaw denies having made any such post. Docket No. 33, Exh. 2, p. 146. In July of 2010, Plaintiff scheduled a Department meeting to be held by the river in August. Thereafter, some members of the Department, including Dr. Cowlishaw and Dr. Shelton, aired their displeasure with the scheduled meeting on Facebook. <u>Id.</u> at 91-108. During that conversation, Dr. Shelton stated: "Wonder if they sell body armor to use under regalia." <u>Id.</u> at 95.

---

[6] "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). The parties rely on, and the court utilizes, the attachments to Defendants' original motion for summary judgment, Docket No. 33, and Plaintiff's response thereto, Docket Nos. 41 and 42. When citing to the record herein, the court uses the pagination assigned by CM/ECF.

Plaintiff reported the offensive Facebook posts.  After an informal investigation, an NSU Affirmative Action Officer found that the "Facebook postings made by Dr. Cowlishaw and Dr. Shelton were "interpretable as racial references."  Id. at 118-19.  The Officer further found: "It appears that the remarks were not intended to be racist or threatening at the level of a hate crime but were instead a poor attempt at showing dissatisfaction and mistrust of departmental / college / university administrators and selection processes."  Id. at 119.

Plaintiff resigned the position of Department Chair effective August 1, 2011.  Docket No. 33, Exh. 2, p. 87 and Exh. 3, p. 43.  Plaintiff applied for tenure in 2012.  Docket No. 33, Exh. 3, p. 43.  The new Department Chair, Dr. Shelburne, forwarded the application to a tenure review committee.  The Committee included Dr. Cowlishaw and Dr. Shelton, both of whom voted against Plaintiff receiving tenure.  Docket No. 33. Exh. 2, pp. 146-47 and Exh. 3, p. 70.  In April of 2013, the Committee denied Plaintiff's application for tenure.  Docket No. 33, Exh. 2, p. 4.  The Department Chair Dr. Shelburne, the Dean Dr. Bridgmon, the Vice Provost Dr. Rugg and the President Dr. Turner concurred with the tenure Committee.  Id.  Plaintiff was informed that his employment would end the following year.  Id.  Later after a Threat Assessment Team meeting, Plaintiff was placed on administrative leave, effective April 26, 2013 through the end of his contract, May 15, 2014.  Docket No. 33, Exh. 2, pp. 68-70.


### *Dr. Brian Cowlishaw*

Dr. Brian Cowlishaw was previously an Assistant Department Chair in the Languages and Literature Department, but resigned that position in February 2009.  Id. at 89.  At all times relevant to this action, Dr. Cowlishaw was an English professor at NSU.  He was not a supervisor over Plaintiff.  In fact, while Plaintiff was the Department Chair, Dr. Cowlishaw was

his subordinate.  Id. at 146.  Plaintiff has submitted evidence that in January of 2010, Dr. Cowlishaw posted a racist comment in reference to Plaintiff.  Then in early 2013, he was a member of the tenure committee and voted on Plaintiff's application for tenure.  Even though three years had passed since the racist comment, tensions had remained high in the department. Docket No. 33, Exhs. 2 and 3.

Although Dr. Cowlishaw avers that he did not make any racist comments and that he did not participate in tenure discussions, given the tension between them, a prudent person in Dr. Cowlishaw's position would not have voted on Plaintiff's tenure application.  The question, however, is whether by doing so, or by any of his other actions, Dr. Cowlishaw violated Plaintiff's constitutional rights and whether those rights were clearly established.

As Defendants argue, the court is not to "define clearly established law at a high level of generality."  City and Cnty. of San Francisco, Calif. v. Sheehan, 135 S.Ct. 1765, 1775-76 (2015). Plaintiff has cited to no authority showing he has a clearly established constitutional right that would prevent a colleague who three years prior made a racist comment on Facebook from voting on his tenure application.  Of course, he has the clearly established general rights he listed on page 8 of his Second Amended Complaint, but existing precedent does not establish that any of Dr. Cowlishaw's actions were in violation of any of those rights.  Plaintiff has not met his burden to show that Dr. Cowlishaw violated his clearly established constitutional rights. Accordingly, Dr. Cowlishaw is entitled to qualified immunity.


### Dr. Donna Shelton

At all times relevant to this action, Dr. Shelton was a professor of foreign language at NSU.  She was not a supervisor over Plaintiff.  In fact, while Plaintiff was the Department Chair,

Dr. Dr. Shelton was his subordinate.  In the summer of 2010, during a Facebook conversation wherein NSU faculty members were airing their displeasure with an outdoor meeting Plaintiff had scheduled, Dr. Shelton stated: "Wonder if they sell body armor to use under regalia." Docket No. 33, Exh. 2, p. 95.  Then in early 2013, she was a member of the tenure committee and voted on Plaintiff's application for tenure.  Even though over two years had passed since her comment, tensions had remained high in the department.  Docket No. 33, Exhs. 2 and 3.

Although Dr. Shelton has testified that she was referring to academic regalia in her Facebook comment and did not intend it to be construed as racist and that she did not participate in tenure discussions, given the tension between them, a prudent person in her position likely would not have voted on Plaintiff's tenure application.  Docket No. 33, Exh. 3, pp. 70-71 and 78. The question, however, is whether by doing so, or by any of her other actions, Dr. Shelton violated Plaintiff's constitutional rights and whether those rights were clearly established.

Plaintiff has cited to no authority showing he has a clearly established constitutional right that would prevent a colleague who more than two years prior made a possibly racist comment on Facebook from voting on his tenure application.  Of course, he has the clearly established general rights he listed on page 8 of his Second Amended Complaint, but existing precedent does not establish that any of Dr. Shelton's actions were in violation of any of those rights.  Plaintiff has not met his burden to show that Dr. Shelton violated his clearly established constitutional rights. Accordingly, Dr. Shelton is entitled to qualified immunity.


### *Dr. D. Audelle Shelburne*

At all times relevant to this action, Dr. Shelburne was an English professor at NSU. When Plaintiff resigned the position, Dr. Shelburne replaced Plaintiff as Department Chair.  Dr. Shelburne did not vote on Plaintiff's tenure application.  Docket No. 33, Exh. 2, p. 138.

Dr. Shelburne concurred with the tenure committee's recommendation to deny tenure.  Id. at 4.  After Plaintiff submitted his tenure application, he accused Dr. Shelburne of racism.  Id. at 7.  After a conversation with the Dean, Plaintiff apologized to Dr. Shelburne.  Id.

Plaintiff has cited to no authority showing he has a clearly established constitutional right that would prevent his department Chair from concurring with this tenure vote.  Of course, he has the clearly established general rights he listed on page 8 of his Second Amended Complaint, but existing precedent does not establish that any of Dr. Shelburne's actions were in violation of any of those rights.  Plaintiff has not met his burden to show that Dr. Shelburne violated his clearly established constitutional rights. Accordingly, Dr. Shelburne is entitled to qualified immunity.

### *Dr. Phillip Bridgmon*

At all times relevant to this action, Dr. Bridgmon was the Dean of the College of Liberal Arts at NSU.  Dr. Bridgmon concurred with the tenure committee's recommendation to deny Plaintiff's tenure application.

Plaintiff has cited to no authority showing he has a clearly established constitutional right that would prevent the Dean from concurring with this tenure vote.  Of course, he has the clearly established general rights he listed on page 8 of his Second Amended Complaint, but existing precedent does not establish that any of Dr. Bridgmon's actions were in violation of any of those rights.  Plaintiff has not met his burden to show that Dr. Bridgmon violated his clearly established constitutional rights. Accordingly, Dr. Bridgmon is entitled to qualified immunity.

### *Dr. William Rugg*

At all times relevant to this action, Dr. Rugg was Vice President of Academic Affairs and Provost for NSU.  Dr. Rugg concurred with the tenure committee's, Dr. Shelburne's and Dr. Bridgmon's recommendation to deny Plaintiff's tenure application.  Id. at 4.

Plaintiff has cited to no authority showing he has a clearly established constitutional right that would prevent the Provost from concurring with this tenure vote.  Of course, he has the clearly established general rights he listed on page 8 of his Second Amended Complaint, but existing precedent does not establish that any of Dr. Rugg's actions were in violation of any of those rights.  Plaintiff has not met his burden to show that Dr. Rugg violated his clearly established constitutional rights.  Accordingly, Dr. Rugg is entitled to qualified immunity.

### *Dr. Steve Turner*

At all times relevant to this action, Dr. Turner was President of NSU.  Dr. Turner concurred with the tenure committee's, Dr. Shelburne's, Dr. Bridgmon's and Dr. Rugg's recommendation to deny Plaintiff's tenure application.  Id. at 4.

Plaintiff has cited to no authority showing he has a clearly established constitutional right that would prevent the President from concurring with this tenure vote.  Of course, he has the clearly established general rights he listed on page 8 of his Second Amended Complaint, but existing precedent does not establish that any of Dr. Turner's actions were in violation of any of those rights.  Plaintiff has not met his burden to show that Dr. Turner violated his clearly established constitutional rights. Accordingly, Dr. Turner is entitled to qualified immunity.

**Conclusion**

Defendant's motion for summary judgment [Docket No. 84] is hereby GRANTED in part and DENIED in part. It is granted as to the § 1983 claims against the individual Defendants. The court previously denied summary judgment as to the state claims against the individuals and the Title VII claims against NSU. Those rulings remain. Defendants' motion to dismiss [Docket No. 77] is MOOT.

**IT IS SO ORDERED** this 19th day of September, 2016.

_____
**THE HONORABLE RONALD A. WHITE**
**UNITED STATES DISTRICT JUDGE**
**EASTERN DISTRICT OF OKLAHOMA**